Filed 1/21/15  Vivian M. v. Super. Ct. CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| VIVIAN M., | B259215 |
| Petitioner, | (Los Angeles County Super. Ct. No. CK91760) |
| v. | |
| THE SUPERIOR COURT OF LOS ANGELES COUNTY, | |
| Respondent; | |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Real Party in Interest. | |

ORIGINAL PROCEEDINGS in mandate.  Debra Losnick, Judge.  Petition denied.

Vivian Morales, in pro. per., for Petitioner.

No appearance for Respondent.

Mark J. Saladino, County Counsel, Dawyn R. Harrison, Assistant County Counsel, Kim Nemoy, Principal Deputy County Counsel, for Real Party in Interest.

———————————

INTRODUCTION

Vivian M., mother of Naomi G. (age 3), petitions for extraordinary writ review (Welf. & Inst. Code, § 366.26, subd. (*l*);[1] Cal. Rules of Court, rule 8.450) challenging the juvenile court's ruling denying her petition to modify (§ 388) the order terminating reunification services and scheduling the selection and implementation hearing (§ 366.26). We deny the writ.

FACTUAL AND PROCEDURAL BACKGROUND

1. *Mother's background*

Mother has a longstanding history of severe alcohol abuse. In early 2011, a hospital found she had very high levels of alcohol in her system and was pregnant. Mother had left Naomi with the child's maternal uncle who sexually abused his stepdaughters. Mother agreed with the Department of Children and Family Services (the Department) to a voluntary maintenance plan of random alcohol testing and outpatient treatment, among other things. Instead, the Department discovered in February 2012 that mother failed to comply, continued to drink and panhandle with Naomi in her arms, and had disappeared. The Department removed the child from mother's care. Naomi was eight months old.

Since 1994, the Department has received numerous referrals involving mother's physical and emotional abuse and neglect of Naomi's older siblings.[2] The Department discerned a "nexus" between "mother's continued problem with substance abuse and a preponderance of General Neglect referrals." Mother admitted she drank heavily. She started drinking in 1995. She claimed she became sober in 2005 but relapsed in late 2011.[3]

---

[1]	All further statutory references are to the Welfare and Institutions Code.

[2]	Neither Naomi's siblings nor her father is a party to this proceeding.

[3]	Mother also has a criminal history dating to 1990, involving such crimes as battery, corporal injury, and vandalism. She and Naomi's father have a history of domestic violence in the child's presence.

The juvenile court declared Naomi a dependent on the basis of mother's alcoholism. (§ 300, subd. (b).) The court granted mother reunification services to include a rehabilitation program with aftercare, alcohol testing, and counseling that addresses case issues such as anger management and domestic violence. The court also granted mother monitored visits with Naomi as long as the child was medically able. The child has a heart murmur and requires regular visits to a cardiologist.

2. *Mother's recovery has been marked by treatment, relapse, and resumption of treatment.*

In the first six months, the Department documented that mother had regular contact with Naomi, had completed a parenting course, attended weekly individual counseling sessions, and finished a four-month inpatient substance abuse program. Mother felt she did not need to undergo the aftercare part of her program. Instead, she attended Alcoholics Anonymous (AA) meetings and met with her sponsor. Mother logged one dirty alcohol test.

In November 2012, the juvenile court incrementally liberalized mother's visits with Naomi. Within a month, however, mother ceased complying with her case plan, failed to return the social worker's telephone calls, and failed to test four times. When the social worker was finally able to reach mother by telephone, mother's speech was slurred and her thought process was unclear. After that, mother ceased all contact and disappeared. In January 2013, the juvenile court reinstituted supervised visits.

Mother surfaced in Arizona in early 2013. She was not visiting Naomi. The Department later learned that mother underwent 15 counseling sessions between August 2012 and January 2013, some of which occurred over the telephone. However, mother admitted she had resumed drinking and had no plan to address her relapse. She missed six more tests between December 2012 and February 2013.

In the spring of 2013, mother resumed partial compliance with her case plan. She twice tested negative for alcohol in March 2013. She explained that she relapsed because of the stress of this case, but she was improving "and can handle things better." She did not have a sponsor and did not care to participate in another program to address her

3

relapse because she believed "she has control of her addiction." Hence, mother failed to attend five appointments for an outpatient assessment in March and April 2013. Also in March 2013, mother started taking Hydrocondone and Acetaminophen, known as Vicodin or Norco, for pain after a car accident, but did not inform her doctor about her substance abuse problem.

Finding mother was not in compliance with her case plan, the juvenile court terminated reunification services for her in April 2013.

3. *Naomi is thriving in her placement with her relatives*

Meanwhile, Naomi was thriving with her maternal aunt and uncle where she was placed soon after her detention. She bonded with her aunt and uncle and was affectionate with them. She related to her aunt as a mother figure, and sought her out. In return, the caregivers were loving. They saw to the child's educational and medical needs. Over the course of the dependency, the caretakers took this three-year-old child to 8 cardiology, 12 pediatric, 2 eye, 8 ear, nose, and throat, and 3 urgent care appointments. She also underwent three surgeries. Mother attended the surgeries and two of the doctor's appointments.

4. *The petition for modification*

A year after termination of reunification, in May 2014, mother filed a petition for modification (§ 388) requesting custody of Naomi or in the alternative, additional reunification services and liberalized visits. As changed circumstances, mother averred that since the termination of services, she completed an aftercare program with testing, attended meetings regularly, and had a sponsor. The proposed change in court order would be in Naomi's best interest, mother averred, because she "has made the changes necessary in her life to provide a healthy home environment for her child. She is bonded to the child. It would be in the child's best interest to have a relationship with her mother."

Attached to the petition was a letter from an outpatient substance abuse aftercare treatment program indicating mother's enrollment in September 2013 and completion as of January 2014. In her attached letter to the juvenile court, mother claimed she had been

4

sober since January 2013, had been involved in an AA program where she regularly attended meetings and worked weekly with a sponsor. Her sponsor's letter confirmed mother's involvement. The court granted a hearing.

The Department recommended the juvenile court deny the section 388 petition and leave Naomi as placed. The Department recognized that mother showed some strength in completing an aftercare program, and characterized mother's visits with Naomi as "adequate." However, although Naomi had some understanding that she has *two* mothers, as she refers to both the aunt and mother as " 'mommy,' " the child had bonded with her aunt and uncle.

At the hearing, mother testified she had found employment. She was in the middle of the 12 steps in her AA program.

The juvenile court denied mother's petition. After commending mother for her "incredible strides" in recovery, the court found no evidence that a change in order would be in Naomi's best interest. Mother's timely writ petition ensued.

## CONTENTION

Mother contends the juvenile court abused its discretion in denying her petition for modification because she has done everything possible to regain her family reunification and her life is better today.

## DISCUSSION

"A section 388 petition must show a change of circumstances *and* that modification of the prior order would be in the best interests of the minor child. [Citations.] To support a section 388 petition, the change in circumstances must be *substantial*. [Citation.]" (*In re Ernesto R*. (2014) 230 Cal.App.4th 219, 223, italics added.) The Department concedes mother has demonstrated changed circumstances.

Nonetheless, even if circumstances have changed, mother fails to demonstrate how custody or a resumption of reunification services and liberalized visitation would be in Naomi's best interests. (§ 388.) In determining the best interests of the child, courts consider three important factors: "(1) the seriousness of the problem which led to the dependency, and the reason for any continuation of that problem; (2) the strength of

relative bonds between the dependent children to *both* parent and caretakers; and (3) the degree to which the problem may be easily removed or ameliorated, and the degree to which it actually has been. While this list is not meant to be exhaustive, it does provide a reasoned and principled basis on which to evaluate a section 388 motion." (*In re Kimberly F*. (1997) 56 Cal.App.4th 519, 532.)

Turning to the first factor, mother's alcohol addiction is serious and has not been conquered. She has been drinking since 1995 and has had multiple relapses over the course of the following 20 years, including one just after the juvenile court granted mother unmonitored visitation with Naomi. Also, mother's participation in aftercare was inconsistent.

As for the second factor, mother argues Naomi knows she is her mother and cries when the two part. The record shows that mother was appropriate during the visits that she had with Naomi. However, with the exception of a short hiatus, during which mother rarely saw Naomi, mother's visits have always been supervised. Meanwhile, Naomi has been in the care of her foster parents for the majority of her life and she has bonded with them. Naomi is thriving with her aunt and uncle, who have provided her with a safe, stable, nurturing environment, who work closely with the child's teachers, and who have seen to all of her medical needs.

As for the third factor, mother's problems have not been easily ameliorated. She has a history of relapse and she is still addressing her substance abuse problem. She has not completed the 12 steps of AA and the court found mother has not completed the counseling element of her case plan. Although mother acknowledges stress causes her to relapse, the only method she uses for coping with stress is to call her sponsor or attend a meeting. Mother has not shown a *substantial change* in circumstances. (*In re Ernesto R*., *supra*, 230 Cal.App.4th at p. 223.)

The child's interest after termination of reunification services is generally in permanence and stability. (*In re S.R.* (2009) 173 Cal.App.4th 864, 871.) At this point there is a rebuttable presumption that continued foster care is in the child's best interest. (*In re Stephanie M*. (1994) 7 Cal.4th 295, 317.) "[A]fter reunification services have

6

terminated, a parent's petition for either an order returning custody or reopening reunification efforts must establish how such a change will advance the child's need for permanency and stability." (*In re J.C.* (2014) 226 Cal.App.4th 503, 527.) Mother argues that "if given [the] opportunity" she could prove it would be in Naomi's best interest to be with mother. She did not make the required showing. Granting the section 388 petition to resume reunification would not serve Naomi's best interests as it would deprive the child of a permanent, stable home in exchange for an uncertain future. " 'Children should not be required to wait until their parents grow up.' [Citation.]" (*In re Ernesto R.*, *supra*, 230 Cal.App.4th at p. 225.)

DISPOSITION

The petition for extraordinary writ is denied.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

ALDRICH, J.

We concur:

EDMON, P. J.

KITCHING, J.